Our third case is 23-1571, Lovo v. Miller. Mr. Seidel, whenever you're ready. Thank you, Your Honor, and may it please the Court, Charles Seidel for Plaintiffs' Appellants Bethany and Merto Lovo. Congress and DHS agree that immigrants on a lawful path to permanent status should not have to endure prolonged separation from their families. Mr. Lovo has availed himself of one such path they created and seeks only an assurance that he will not be separated from his home and family for 10 years should he continue the process. This is the precise reason that Congress passed Section 1182A9B5 and the precise goal of DHS's implementation. Well, look at the uniqueness of this issue in this case here, which is dealing with a delayed thing and questioning whether or not it's action and that sort of thing. But also, think about it in the context of what can we do as a court in terms of ordering Homeland Security. When you look at this thing holistically, Homeland Security did something to help to alleviate a really bad situation and cause people not to want to even seek a visa because you had to leave and be out of the country for 10 years. Who would take that risk? Most people probably didn't. I probably wouldn't have done it, but they gave this avenue and your complaint is you take in too long to answer and for various reasons. I got it. There's probably very legitimate reasons why they want them to go ahead and answer this because the DACA thing, we don't know where that is from day to day. So how to just address those issues because I think that's the key to this case, the action, what it means, and then the extended question from that. Right, Your Honor. So I guess I'd start by noting that the DHS regulations here create the provisional unlawful waiver program. They, for the first time, create a system in which an immigrant can apply for this benefit before leaving the United States. And this Court and the Supreme Court have both explained that where an agency creates an application process or create a benefit and they bind themselves to act on applications by regulation, then they create a nondiscretionary duty to resolve the applications before them. And in those circumstances, Congress has made a determination that unreasonably delayed action is actionable under 706.1 and that overlaps with the Mandamus Act. So the question of whether there is a cause of action here I think is pretty clear that Congress did intend for these types of delays to be actionable. Now of course, your point that the complaint here is just that they were taking too long I think is one that comes up in pretty much all 706.1 delay cases. This is a pretty common fact pattern in these cases, and it's something that the Court often resolves on the merits when looking at the... Except we're not under 706. We're under the Immigration Act. You're under 1182. The cause of action here was a cause for unreasonably delayed agency action under 706.1. I understand, but you know there's plenty of authority. The Supreme Court, including our court, has said that the Immigration Act displaced the APA and that they don't function interlaced with each other. I mean, we've said the INA is a self-contained, comprehensive, and reticulated administrative process that displaced wholesale the provisions of the APA and therefore been applicable. And the Supreme Court explained exactly why, because Congress considered the APA as a model. And then they said they put it in, and the court went on to point out, and the two acts were not intended to function as an interlaced fashion such that the APA applies to matters not specifically addressed by the INA. And there were two Supreme Court cases that have held that. There is a whole process in the INA for handling these things, and your basic claim is that you're seeking a discretionary waiver and the agency's taking too long. The APA addresses that to some extent, but the APA is not applicable. Your Honor, I think this court's recent decision in Gonzalez demonstrates that the APA did not intend to, sorry, that the INA did not, and IRIRA did not, intend to fully displace the APA's cause of action for a waiver. You can read Marcello and Destro, Ardestani, two Supreme Court cases, fairly recent, that fully displaced it, and they said it's not interlaced where we go to the APA for provisions and imply it. If you're under the INA, you're under the INA, and it provides the provisions. The only place the court has deviated from that is in the DACA program. And the DACA program, they concluded, was not under the INA. It was a separate program, and they addressed it under the APA. But you have to address those two cases, and our case in Guzman, that we said all these provisions were displaced. And so if there is a chance for review, judicial review, under the INA, you can invoke it. But you can't take a particular section of the INA and say, we're going to look to the APA for the definition of action, and say action includes delay. Your Honor, my recollection and understanding of the cases you're citing is those are about the question of when you can review agency action under 706-2. And the Supreme Court and this Court have explained that the INA provides for a comprehensive set of circumstances where you can obtain review of agency action. You also said it displaced the APA. But this Court has recently, in Gonzales, evaluated this question by looking at APA 706-1 and the Court's decision in Norton v. Suha, and determining whether there is an APA. The APA says that there's another statute that governs. And here, the statute says you can't review an agency, you can't review the INA's action or decision, because it's discretionary. And that's certainly the government's argument that there is an independent... That's what the statute says. That's certainly the government's argument that there's an independent jurisdictional bar that comes into play here. But I don't think that there's any argument that the INA intended to totally displace the mandamus remedy that's available under either the APA 706-1. You can argue, but you're going to have to set aside two Supreme Court cases and our own decision in Guzman which specifically addressed that. Your Honor, I simply think that's not the case. I think that, you know, those cases... It's not the case. I think that those cases reflect the concept that while IRIRA and the INA meant to define the cases in which you could obtain post-decisional review of agency action and maybe displace the general 706-2 remedy, I think that there's no argument that they displaced the mandamus act. And this court has... Well, mandamus is totally different. That's not the APA. But this court has held that 706... Your Honor, you either have the INA or you have mandamus. Your Honor, I think that there's also the 706-1 cause of action in the APA that was not displaced like the 706-2 action was by IRIRA and the INA. And there's good reasons... How do you handle the Supreme Court's notion that it was a wholesale displacement and that the two acts are not to be interlaced with each other? Your Honor, I mean, I think that there are plenty of analogous provisions of the U.S. Code where Congress specifies... I'm not talking about that. I'm talking about how do you address the Supreme Court's ruling giving the history of it and the congressional thing. They say they modeled the INA after the APA. It used to be under the APA. They modeled it afterwards and then this was a wholesale displacement. And the idea that immigration proceedings are governed by the INA and not the APA. Your Honor, I think what that is saying is that the INA and IRIRA specify the set of circumstances in which you can obtain post-decisional review when an agency has acted. I don't think that they wholesale displaced the APA in this... So that's what they said. Well, I mean, that certainly can't be the case. And that's definitely not consistent with what the government has argued in that they're the APA's definitions have to apply in this context. So, and I think it's inconsistent with this Court's recent precedents considering whether there is a 706-1 action to compel, for example, placement on the U visa waiting list in Gonzales that I believe postdates both the Supreme Court opinions in question. So I don't think that there can be the case that there's no remedy here. And in any event, we did bring a mandamus claim and that's evaluated under same standards as 706-1. So even resolving that question, I think, doesn't dispose of the case. You know, I'd like to just briefly discuss the notion that USCIS has no obligation to act here because, as Judge Wynn asked about at the beginning, that this is a statute that uses the word discretion. But I think that for three reasons, USCIS really does have an obligation to act on provisional waiver applications before it. First, I'd point to the APA's general background presumption under 5 U.S.C. 555 that there is a general and non-discretionary duty for agencies to act on matters before them and conclude them within a timely matter. Nothing within the waiver review provision here purports to relieve USCIS from this general obligation. And that general obligation is all the LOBOs are seeking to enforce through their 706-1 action. And then I'd point to USCIS's own regulations, which I think underscore the mandatory nature of their obligation here. These regulations located at 8 CFR 212.7 create the provisional waiver review program, which as I explained, for the first time allows immigrants to apply for this benefit before they leave the country. It's something they couldn't do before. And so when USCIS points to the word may in 212.7E2, what that may is doing is, it's a permissive may. It's empowering the agency to grant these and endowing the director of USCIS with the authority to grant these provisional waivers, which is something that didn't exist before. And subsequent provisions of the same regulations demonstrate that USCIS thought its obligation was mandatory. USCIS says that relevant provision on the E2 is simply assessing this discretion. That E8 is simply stating what it adjudicates. Your Honor, I simply don't think that that's the best understanding of what E2 is doing. E2 says that they may adjudicate the applications. And I think that that may is permissive. Like Judge Niemeyer noted in the first case today, may is something that can mean, you know, I might do something where I have discretion to do something. But when the district court says you may approach the bench, what we understand that to mean is that the district court is giving you permission to do something. It's empowering you to do something that you couldn't do before. And that same paragraph continues to note that the decision about whether to grant an application is discretionary. It says nothing about whether the decision about whether to adjudicate the application at all is discretionary. And then subsequent provisions. I note, you know, E5 Romanet 2, which creates an exhaustive list of circumstances where the agency will reject an application as incomplete or procedurally defective. E1 is what grants jurisdiction. And so does your reading of E2 make E1 superfluous? No, Your Honor, I don't think so. I think that what E2 is doing is essentially just saying, you know, for the first time, this is the kind of thing that can be granted. E1, I think, establishes the jurisdiction over the whole program. But E2 is saying, you know, this is a new thing and the USCIS director may grant these. I don't think it's saying that they may or may not grant these. I think that's reinforced by subsequent provisions of the same regulation, like E5-2, what I was mentioning, which creates a set of circumstances under which the agency will not adjudicate applications. And there's nothing on that list about USCIS just deciding not to adjudicate applications. There's nothing on there about USCIS enforcement priorities or resource allocation priorities. And then, as we point to in our brief, I believe it's E8 that says that the agency will adjudicate applications. And if it determines that an applicant is ineligible or that otherwise a waiver shouldn't issue, it will deny the application. And then E9 states that the agency will inform applicants of any action on their applications. And I think that, taken together, all of those provisions point in the same direction, which is that USCIS created a program in which it didn't really envision making a decision to not adjudicate applications. I'd also note that there just simply is nothing in the record here to indicate that USCIS has made such a decision or taken any action at all on this application. If you get beyond the action-inaction part of it in your favor, you're still left with the actual provision here. To what extent is that a mandatory? You get into the may and will aspect of it, but that's the real question is, okay, maybe you're correct that you can come to us on this. But getting here, then you now have to, the actual provision, does it, is that something required? They took 10 months, they have taken three months, you say there's a violation here for the words that you used earlier, indicate where there's a little A, you want to import some meaning from the APA. But nonetheless, that doesn't exist if there's discretion within the Homeland Security to do something or not. You can't make it do something it is not, I guess, required to do. Right, and our argument here is that USCIS, one, has a general obligation to timely process applications before it, and two, has created this program in which it has committed itself to adjudicate these applications. There's simply no indication in the regulations, absent the may that USCIS points to that I think it's misreading, that indicates that USCIS might just decide not to exercise its discretion one way or another. And this court noted in Gonzales and the Supreme Court explained in SUA that, of course, an agency is bound by its own regulations and the thing that binds agency with a force of law to act can come from the agency's regulations. And this court has explained in the past that the key inquiry here is just looking at the statute and regulatory regime. Does it look like the agency thought that it was bound to act, or does it look like the kind of thing that the agency was trying to reserve discretion on so that it might just not act at all? And I think that the reading of the regulation here is that the agency was trying to maintain its discretion over the ultimate outcome of this case, and maybe actions along the way. But I don't see any argument that the regulations simply don't require the agency to act at all. And in that circumstance, I think it's uncontroversial that the court can, has the jurisdiction. One last little thing that might help in terms of decision making here. What if we say it's ambiguous there? Does the aura, aurea, deference play in a role? Your Honor, I think that, you know, to the contrary, I think that the presumptions here that apply in both interpreting regulations and statutes, that jurisdiction stripping should be construed narrowly, and that we should interpret statutory and regulatory provisions in favor of judicial review, both cut in favor of our reading. So, you know, and the agency certainly has made no claim to deference. I, you know, I think under Kaiser, there are good reasons not to, not to defer to this agency's interpretation of its regulation announced for the first time in this litigation, because it does appear, it's not a formal interpretation. It's not an announcement the agency has made anywhere else. It isn't the case where the agency has guidance or has something on the instruction forms or its website saying, hey, we might just not process your applications. What the agency has done is created a regime in which it collects, you know, it charges immigrants substantial amounts of money, nearly $1,000, and calls that an application processing fee, and now is in court arguing that it has no obligation to process applications at all. And we think that that's untenable. And, you know, unsurprisingly, to our knowledge, it appears that USCIS has consistently adjudicated the applications that are presented to it. Sometimes it takes a long time. In the past, it took four to five months, and now it appears to be taking about 44 months. And all we're, you know, the only argument here is that the balloon in agency delay has That's exactly the kind of claim that's actual under 706-1. You know, I see that my time has elapsed. I'd like to save some time for rebuttal. You may. Thank you, counsel. Mr. Nguyen. James—excuse me. James Nguyen for the government. Good morning, your honors. May it please the court. Congress enacted 8 U.S.C. 1182A9B5, in which it granted the Secretary of Homeland Security discretion to waive a ground of inadmissibility relating to a noncitizen's unlawful presence. And yet, under that same enabling statute, Congress expressly stripped federal courts of jurisdiction by stating, no court shall have jurisdiction to review a decision or action by the Secretary regarding a waiver under this clause. That jurisdiction stripping provision applies to plaintiff's unreasonable delay claim, challenging USCIS's pace of adjudicating his unlawful presence application. That's the whole number of the case. Is it decision or action? They say that doesn't include inaction. Your honor, I agree that that's where a lot of the action is in this case, so to speak. And the government's position is that action is very, very broad, and we know that from—and this jurisdiction stripping provision, the statutory language— There is a front. If you look at the dictionary definition, it's not so broad. You've got to look at some other stuff to make it broad so that action includes inaction. But, your honor, they're not really alleging that USCIS is engaging in any inaction. They're not saying that USCIS isn't doing anything. They've not alleged that USCIS has ceased all processing of the waiver applications generally or that the agency is single out Mr. Lovo's application in particular. The real issue is just that plaintiffs have is that USCIS isn't prioritizing its work in the way that they would prefer. Y'all agree if they were to deny or you couldn't review that. That's absolutely right. That's all I have to say. The question is, can you force the review of where a regulation, which they have the same kind of powers and statute, says you're going to do something and you don't do it. And, is that an actionable situation that's different from a decision? A decision would be a denial of grant or action, which means do something. But, inaction, doesn't sound like to me, means there's inaction in inaction. Well, USCIS's actions that determine and underlie the pace of adjudicating any given waiver application is an action that Congress precluded from judicial review. So, to answer your question more precisely, even USCIS's actions related to its priorities and its resources that affect the time it takes to process a waiver application, those are actions. I mean, just taking the plain meaning of action, it's defined as the process of doing something. And, deciding the pace of adjudicating these waivers fits within the process of adjudicating waivers themselves. Um, the argument I gather is that it's taking too long to decide this and the agency hasn't acted. And, the argument they're making is that the only discretionary bar from that provision is either action or decision. And so, let's assume they're right, that that doesn't address inaction. The question I have is, is there a place where they can sue for inaction and get to federal court? Inaction by the agency, is there a provision that grants them the authority to get to federal court? I thought the INA has stated exclusive provisions to get to federal court. Uh, and inaction on the decision to decide a waiver issue under that provision is not one that has been authorized to come to federal court. Right. So, which would leave, seems to me, if the statute doesn't give them a right, then they would have to rely on mandamus. And, the problem with the mandamus is they have to have a clearly established right to enforce. And, here's a clearly established right to force the agency to decide it quicker than seven months. I think they filed it seven months or something after. It's not granted. But, it doesn't advance the case too much to say action includes inaction. It may. But, if it doesn't, it doesn't get them any further because they have to affirmatively get a right to come to federal court for the agency's inaction. Yes, your honor. So, I'll take, I think the main thrust of your question is, how do they get into federal court with their unreasonable delay claim? That's the whole thing. You want us to dismiss this. The district court dismissed it for lack of jurisdiction. And, we are granted jurisdiction under the INA under a bunch of provisions. But, I don't think any of them state this. Not only that, the provisions that do grant us authority say they're the exclusive means. Right. And, your honor. So, Plaintiff's position is that they can get into, they can raise their unreasonable delay claim under the APA under 7061. Our position is that the APA jurisdiction is displaced under 701A1 because there's a jurisdiction that precludes judicial review under the APA. So, and that's the... We went down the whole APA. There's problems, too, because of discretionary actions, agencies, and it has to be an unreasonable delay. And, the question is, how do we interfere with the agency when they have a queue that's seven months long? Are we going to advance one person who's in the queue further back? What do we do with all other people in the queue? I mean, it's a difficult proposition. But, there is this legal problem that Andrastani made pretty clear that the provisions, they use the word exclusive. The procedures were intended under the ANA to be exclusive of the APA. And, this is pretty strong language, and they said it totally displaced it. And, they gave all the reasons why that was so, and a lot of good reasons for that. I think the INA, it's certainly fair to say that the INA has displaced jurisdiction, displaced APA causes of action in many, many circumstances. And, it's our position that it does so again in this... Well, it says in all circumstances involving, they use the word immigration procedures. In other words, they said this was a self-contained statute, and it displaced the APA in all immigration procedures is the word they used. And, it's the government's position that I think it's certainly, I think it's fair to say that there is no subject matter jurisdiction, whether it's in the INA or in conjunction with the APA. I understand your APA argument. Your argument is that they reached the same dead end under the APA. Yes, and that is the government's position here. We are dealing with a whole thicket of jurisdiction stripping provisions under the INA as amended under the IRA-IRA and the Real ID Act of 2005. But, I also think that Patel provides also very important guidance in how we read this 8 U.S.C. 1182-89-B5 jurisdiction stripping provision. Patel, the recent Supreme Court case, provided us a lot of, instructed us to use the plain meaning of language and took a very broad reading of the jurisdiction, the companion jurisdiction stripping provision in 1252-82-B1. And, we're simply asking this Court to read 1182-89-B5 the same way. And also, plaintiffs suggest that, actually they urge that 1182-89-B5 precludes review only the discretionary decision, whether to grant it or deny a waiver application. But, Patel forecloses that interpretation. And, also just to aid with a plain reading regarding which Patel analyzed by looking at the plain meaning of regarding has a broadening effect. So, it opens up the scope of actions that we can consider. And, which is why we're saying that the action that is also precluded from judicial review are the decisions that determine the pace of adjudication in these applications. But, I also want to, you know, touch on the 706-1 case in Gonzalez, which plaintiffs discuss. I think Gonzalez is on point and is on all four, especially when it comes to the issue regarding the U visa work authorization issue. We have a statute that was discretionary, just like the U visa, work authorization statute. And, we have regulations where it does not provide a specific unequivocal command to do anything. So, without a specific unequivocal command by statute or by regulation, there is no 706-1 claim. And, there's no overlapping mandamus claim. And, I think claimants also make a pretty important concession here. They say that they concede that the regulations might be ambiguous. But, if it's ambiguous, you know, we don't need to resort to Kaiser or IR deference, you know, in terms of interpreting the regulation. We look at Norton, and Norton says, Norton would suggest that that is simply not, that that is not a specific unequivocal command. That ends the inquiry. So, it's the government's position that there's no jurisdiction here under the plain language of the INA under this jurisdiction stripping provision. There's also no jurisdiction under 706-1, just like in Gonzales. And, if there are no further questions, we ask that you, from the district court. Thank you, your honors. Thank you, your honors. There's a couple points I'd like to address on rebuttal. First, on the question of decision or action, USCIS points to this background series of actions that it claims have governed the overall pace in which it adjudicates applications. Even if the court could credit those allegations at this point, they're unsupported, and this is an early stage, so they can't. But, even if it could, there's no way that those are decisions or actions regarding all waiver. This court and the Supreme Court have both said that A is a particularizing term, and the question here is whether there are decision actions regarding this waiver, the waiver at issue. And so, you know, USCIS's interpretation would stretch the jurisdiction stripping provision beyond recognition to encompass challenges to things like appointments of USCIS leadership, or challenges arguing that, for example, USCIS failed to comply with the notice and comment procedures in the APA, and those are just totally untenable. We made this point in our brief, and USCIS has no response to that. I think that those should be dismissed out of hand. Second, there have been a variety of concerns discussed here that I think are fairly characterized as merits concerns in track factor cases. Questions about whether the agency has acted in bad faith. The sixth track factor specifically says that there doesn't need to be any bad faith or illegality behind the agency's lassitude in order to find delay unreasonable. That's just inconsistent with the governing framework here. And questions about what the court should do with respect to the agency's prioritization, how long is too long, things like that. Those are all questions that go to the merits of the track factor analysis, which should be decided by the district court after further briefing. The question before this court is whether any independent jurisdictional bars prevent it from reaching that point, and we think that the answer is no. Third, I'd just like to address the questions that Judge Niemeyer was asking about the displacement of the APA. I think that this is a common statutory scheme where what Congress will do is say that this is how you obtain review of an agency's decisions, and in that way, they'll replace the 7062 action. This happens in the FERC context. This happens in the FDA context and Section 21 U.C. 355H. And in those cases, you can't then try and get around that review provision by suing under 7062. But in those cases, Congress has maintained the 7061 action for when the agency doesn't act. There's a good reason to think that's what they would have wanted to do here. The entire point of the statute was to streamline an immigration process that Congress saw as a quagmire of post-decisional judicial review, and so Congress eliminated judicial review and administrative review layers that resulted in second-guessing of agency judgments. That just has no application to the case where the agency hasn't acted at all, and it's totally defensible to imagine that Congress might have wanted to speed things up on the back end by eliminating judicial review and allow people to speed things up on the front end when the agency was taking too long because the goal was speed and certainty. I'd like to briefly address the Patel arguments because I think Patel has almost nothing to say about this case. In Patel, the court was interpreting the word judgment and concluded that where the agency had made a discretionary judgment, one of the specified judgments under that provision of the INA, then subsidiary determinations that the agency made that were themselves components of that judgment, were unreviewable as well. That says nothing about the situation where the agency has not acted at all. The Lobos are not seeking to review some interlocutory decision or action of USCIS. They're seeking to review the fact that the USCIS has not acted at all. In terms of Gonzales, I think it bears emphasis that the court, when discussing the UBISA work authorization claim in that case, was moved by the fact, in large part, that the regulations there had been repealed. And that meant that there are no regulations or defined procedures, much less long-standing ones, for evaluating the applications at issue. That's a quote from Gonzales at 370. I think that the crucial point, the crucial distinction here, is that here we do have a set of regulations, a comprehensive regime, where USCIS has implemented regulations that compel it to adjudicate applications presented to it. It allows people to pay it for applications. It allows people to submit these applications and provides the basis on which it'll make its judgment. And it doesn't anticipate, there's nothing in the regulations that anticipates, that it'll simply refuse to exercise discretion one way or another. I think the government is wrong to suggest that we concede that the regulations are ambiguous, because I think the regulations all, every provision of the regulations, point towards this conclusion. I think the government is also wrong to suggest that we argue that the only unreviewable thing is the decision or action. As we explain in our reply brief at great length, we do think that there are definitely actions along the way, they're not the final decision, that are unreviewable. We acknowledge that there are a variety of things USCIS could do that would not be a final decision or final judgment on the application that we don't think we could seek review of. But decision or action, just by its plain terms, does not encompass inaction. That's the conclusion that the overwhelming majority of district courts and courts of appeal have reached when considering identical language elsewhere in the INA. And it's the conclusion compelled by the plain language here. And USCIS' only way around that is to suggest that the court should silently import the APA's definition of agency action into this statute, which this court explained in Lansdowne is not the kind of thing that it normally does. When Congress wants to borrow from the APA, it does so expressly. And good evidence of that is the fact that other provisions of IRIRA, including Section 04, do explicitly cross-reference the APA for definitions, when that's what Congress meant to do. There just isn't anything like that here. So there's nothing to suggest in this provision that Congress meant the words decision or action to mean the opposite of what they normally do, which is exactly why Congress defined decision, I'm sorry, agency action in the APA to encompass the failure to act. I guess I'd just like to conclude by sort of framing what exactly is that issue here. While I mentioned, as I explained before, the questions before this court are the jurisdictional questions about whether the waiver review provision bars this court's review of what are admittedly procedurally valid claims under the Mandamus Act and the Administrative Procedure Act 706.1. The government here does not argue that the INA displaces the 706.1 action, and none of the hundreds of district courts or courts of appeals, considering other provisions of the INA or IRIRA and 706.1 claims to things like the U visa authorization, sorry, U visa work authorization request or the U visa waiting list request, have considered that the INA totally eliminated this cause of action. I think that's inconsistent with this court's precedence, and it is an over-reading of a few Supreme Court cases that predate even this court's most recent decision in Gonzales on this exact issue. So because there is a cause of action here, and because there is no independent jurisdictional bar in the waiver review provision, we would ask this court to reverse the district court's decision and remand this court, remand this case for further proceedings where the court can evaluate questions of the appropriateness of relief under the track factors. Thank you, counsel. Thank you, Your Honor. We'll come down and greet counsel and move on to our final case this morning.
judges: Albert Diaz, Paul V. Niemeyer, James Andrew Wynn